**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN H. AUTREY,

    Plaintiff,
v.

Detroit Police Officer DARRYL OSBORNE,
Detroit Police Sergeant JOHN F. KENNEDY, badge S-168
Detroit Police Commander BRIAN R. STAIR,
Detroit Police Deputy Chief CHESTER LOGAN,
Detroit Police Asst. Chief ROBERT DUNLAP,
Detroit Police Chief of Police ELLA BULLY-CUMMINGS
The CITY OF DETROIT, a Municipal Corporation,

    Defendants.
_____/

**Robinson & Associates, P.C.**
**David A. Robinson (P 38754)**
**Racine M. Miller (P 72612)**
Attorneys for the Plaintiff
28145 Greenfield Road, Ste. 100
Southfield, Michigan 48076
(248) 423-7234
attyrobinson@davidrobinsonlaw.com
attymiller@davidrobinsonlaw.com
_____/

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY

NOW COMES the Plaintiff, JOHN H. AUTREY, by and through his attorneys

ROBINSON AND ASSOCIATES, P.C., and for his Complaint against the Defendants states

unto this Honorable Court as follows:

### INTRODUCTORY AND JURISDICTIONAL STATEMENTS

1.    This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983, and 1988,

and the Fourth and Fourteenth Amendments to the United States Constitution against these

1

named Defendants in their individual capacities and/or official capacities and against the City of Detroit, Michigan. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1332 and 1343.

2.     It is alleged that these Defendants, while acting under color of law and in the scope of their employment as police officers, caused the malicious prosecution of Plaintiff, and caused the unlawful search, seizure and prosecution of the Plaintiff, amounting to gross negligence and thereby violating his Constitutional rights.

3.     As to the negligent conduct of the Defendants, it is alleged that the Defendants caused injuries to Plaintiffs while acting in the course of employment or service or on behalf of their governmental employer and:

   a. Defendants were acting or reasonably believed that they were acting within the scope of their authority,

   b. the governmental agency was engaged in the exercise or discharge of a governmental function, and

   c. the Defendants' conduct amounted to gross negligence that was the proximate cause of the injury or damage.

4.     As to the intentional conduct of the Defendants, it is alleged that:

   a. The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

   b. the acts were undertaken with lack of good faith, or were undertaken with malice, and,

   c. the acts were not discretionary.

5.     Plaintiff John H. Autrey ("Autrey") was at all times pertinent hereto a Commander of the Detroit Police Department, and a citizen of the City of Detroit, State of Michigan.

6. The individual Defendants were, upon information and belief, at all times relevant to this Complaint, officers employed by Defendant City of Detroit and were at all times relevant to this Complaint each acting in the scope of their employment and under color of law.

7. Defendant Detroit Police Chief Ella Bully-Cummings at all times relevant to this Complaint was the Detroit official with final policymaking authority relevant hereto.

8. Defendant City of Detroit is a Municipal Corporation incorporated under the laws of the State of Michigan.

9. The facts underlying this action arose in the County of Wayne, State of Michigan.

10. The amount in controversy exceeds $75,000.00 exclusive of costs, interest and attorneys fees.

## FACTUAL ALLEGATIONS

11. Plaintiff realleges each preceding paragraph as if more fully stated herein.

12. On April 28, 2007, Detroit Police Commander John Serda received a phone call from Detroit Police Lieutenant Gaspar Rossi, informing him that Detroit Police Commander Todd Bettison had been involved in an auto accident.

13. Deputy Chief Joyce Motley and Defendant Deputy Chief Logan were notified.

14. Commander Serda then called Plaintiff (and former Detroit Police Commander) John Autrey.

15. Plaintiff, Cmdr. Serda, Sgt. Hayes and Defendant Logan proceeded to St. John's Hospital to check on the condition of Commander Bettison.

16. Hayes recovered Bettison's I.D. card and weapon.

17. Serda went to the location of the auto accident involving Bettison, at Seymour and Hayes in Detroit, and recovered a cell phone belonging to Bettison, then returned to the hospital and

reported his observations (2-car accident, wine bottles around the area) to the officers at the hospital.

18. Defendant Deputy Chief Logan did not himself, nor did he direct anyone else, to return to the scene of the accident for any reason.

19. Defendant Deputy Chief Logan stated that Internal Affairs was not coming out to the scene, and that everyone could go home, effectively "releasing the scene."

20. Serda gave Plaintiff the cell phone belonging to Bettison.

21. Hayes gave Plaintiff the I.D. and weapon belonging to Bettison.

22. Plaintiff then left the hospital, and proceeded to the scene of the accident to recover the personal items of Bettison before going home for the night.

23. Plaintiff wrote in his report that the scene was no longer a crime scene, per Defendant Logan.

24. Upon arrival at the scene, Plaintiff observed two scout cars, and identified himself, advising the officers there that he was retrieving Commander Bettison's personal property from his vehicle.

25. Plaintiff retrieved a child's car seat, and Bettison's department-issued flashlight from the vehicle.

26. One of the officers at the scene stated that an empty "wine cooler" bottle was in the passenger door compartment, and that officer retrieved the empty bottle and handed it to Plaintiff.

27. Plaintiff then left the vehicle, and picked up debris from the area, including 3 empty bottles of wine, a white plastic bag containing 2 chicken dinners, and 2 empty soda cans.

28. One of the officers at the scene assisted Plaintiff in carrying the items to Plaintiff's vehicle.

29. Plaintiff then traveled to Northeastern District, secured Commander Bettison's personal property, and discarded the empty beverage containers, and the food.

30. Detroit Police blotter and notification and control entries indicated that "no executive notifications" would be made.

31. The media found out about the accident.

32. After the media found out about what appeared to be a "drunk driving" crash involving a police officer, Internal Affairs went to the accident scene; three hours after the accident.

33. Defendants wrongfully accused Plaintiff of the commission of felonious acts, including tampering with evidence, with full knowledge of the falsity of the allegations.

34. On May 4, 2007, an Investigator's Report was submitted to Wayne County Assistant Prosecuting attorney Robert Donaldson.

35. On June 11, 2007, APA Donaldson signed the Investigator's Report, and based upon the wrongful allegations of the Defendants, recommended that Plaintiff/Commander Autrey be charged as follows:

    a. Misconduct in Office

    b. Evidence Tampering

    c. Neglect of Duty

36. On June 11, 2007, a felony warrant issued, and Plaintiff was suspended by Defendant Deputy Chief Logan.

37. On June 12, 2007, Plaintiff was arraigned, entered a plea of not guilty, and was issued a $10,000.00 personal bond.

38.     On July 18, 2007, a preliminary examination was held, where testimony was given by Chuney, Osborn, and Defendant Logan.

39.     Plaintiff was bound over for trial.

40.     On January 15, 2008, Plaintiff was tried on all charges, and the testimony of Chuney and Serda, Defendants Osborne and Kennedy, and the Plaintiff was taken.

41.     Plaintiff was found not guilty of all charges within fifteen minutes of jury deliberation.

42.     The prosecution was brought about by Defendants' unreasonable, inadequate and deficient investigations, and/or false statements without which there existed no probable cause.

43.     Perjurious testimony was given at the Plaintiff's trial.

## COUNT ONE
## VIOLATION OF THE U.S. CONSTITUTION
## AGAINST THE INDIVIDUAL DEFENDANTS(42 USC 1983)

44.     Plaintiff realleges each preceding paragraph as if more fully stated herein.

45.     By reason of their acts as set forth in the Complaint, the individual Defendants acted under color of state law and with oppression and malice to Plaintiff, to the deprivation of his rights, privileges and immunities secured by the Constitution and laws, to wit;

  a. The right not to be deprived of liberty or property without due process of law, as secured by 4th and 14th Amendments to the Constitution of the United States of America;

  b. The right to be free from unreasonable searches and seizures, and to be secure in his person as provided by the 4th and 14th Amendments to the U.S. Constitution.

46.     Defendants' conduct was in accordance with the practice, usage, policy, procedures, and/or customs of their employer Defendant City Detroit - policies of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution.

47.     As a direct and proximate result of each Defendants conduct, Plaintiff suffered serious injury and damages as set forth in this Complaint.

6

## COUNT TWO
## VIOLATION OF THE U.S. CONSTITUTION
## AGAINST THE CITY OF DETROIT (42 USC 1983)

48. Plaintiff realleges each preceding paragraph as if more fully stated herein.

49. Defendants' above-described conduct was performed under color of law while they were working as officers for Defendant City of Detroit.

50. Defendants above-described conduct deprived Plaintiff of clearly established rights to freedom from unreasonable and illegal search, seizure and/or prosecution.

51. Defendant Detroit knew or should have known of Defendant Officers' propensity for such unconstitutional conduct.

52. Defendant Detroit failed to safeguard against said known unconstitutional conduct and such failure amounted to a tacit approval of said conduct and Defendant is directly liable for violation of Plaintiff's liberty, property and bodily interests, and their right to be free from unreasonable and illegal search, seizure and/or prosecution.

53. Defendant Detroit had a custom, pattern and/or practice of failing to take disciplinary action to correct or remedy the unlawful conduct of Defendant Officers and other Detroit officers who engaged in similar conduct.

54. Defendant Detroit had a custom, pattern and/or practice of failing to supervise and/or train Defendant Officers and other Detroit officers who engaged in similar conduct.

55. Defendant Detroit had a long standing custom, pattern and/or practice of demonstrating deliberate indifference to unreasonable, inadequate and deficient investigations, illegal searches and seizures; and unsupported prosecutions complained to by law officers.

56.     Defendant Detroit demonstrated deliberate indifference by the adherence to, application and interpretation of, and/or acquiescence in the  following policies, customs, patterns and practices, which were wholly defective:

a.      failing to adequately screen active duty police officers and new recruits for propensities for abuses of power and psychological disturbances which could foreseeably endanger citizens;

b.      tacitly approving an unwritten custom of failing to discipline officers who  made unreasonable, inadequate and deficient investigations and unsupported prosecutions;

c.      failing to adequately investigate complaints against  officers who were claimed to have  performed unreasonable, inadequate and deficient investigations and/or unsupported prosecutions;.

d.      failing to train officers regarding:   proper investigation of crimes under these circumstances, search, seizure and prosecution initiation and continuation.

57.     Defendant Detroit was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and was conscious of the risk of harm posed by the conduct of Defendant Officers.

58.     Defendant Detroit's failure under the circumstances to properly supervise, train and/or discipline Defendant Officers and officers who engaged in similar misconduct was objectively unreasonable and  demonstrated a deliberate indifference to incidents and complaints of its officers.

59.     As a direct and proximate result of the acts and omissions of Defendant Detroit, Plaintiff suffered severe injury and damage as set forth herein.

## COUNT THREE
## SUPERVISORY LIABILITY OF DEFENDANT BULLY-CUMMINGS

60. Plaintiff realleges each preceding paragraph as if more fully stated herein.

61. Chief Bully-Cummings implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of each Defendant.

62. Defendant Bully-Cummings, while acting under color of law, by acts and omissions, did affirmatively subject Plaintiff to deprivation of his rights, privileges and immunities as secured by the Constitution of the United States as follows:

   a. violating the right of the Plaintiff not to be deprived of liberty or property without due process of law as provided by the 4th and 14th Amendments to the U.S. Constitution;

   b. violating the right of the Plaintiff to be secure in his person as provided by the 4th and 14th Amendments to the U.S. Constitution.

   c. Implicitly authorizing, approving or knowingly acquiescing in the unconstitutional conduct of the individual Defendants; specifically, Bully-Cummings knew that Defendants knew that Plaintiff was not guilty of the crimes alleged, and knew that in spite of their certainty they were going to, and in fact did, identify and/or swear under oath that Plaintiff had committed the alleged offenses. Nonetheless, Bully-Cummings did nothing to prevent such conduct.

   d. Failing to investigate complaints against the individual Defendants about their false statements and perjury, and failing to discipline them.

63. The acts and omissions of Bully-Cummings were under color of law, and were in accordance with the practice, usage, policy and procedures, and customs of the Defendant City of Detroit's policies of deliberate indifference to Plaintiff's rights as secured under the U.S. Constitution.

64. As a direct and proximate result of Bully-Cummings' conduct, Plaintiff suffered injury and damage as more fully set forth below.

## COUNT FOUR
## GROSS NEGLIGENCE

65. Plaintiff realleges each preceding paragraph as if more fully stated herein.

66. Defendants owed Plaintiff a duty to perform their law enforcement duties competently without causing unnecessary injury or harm.

67. Defendants breached said duty by failing to properly investigate, providing false information, failing to provide exculpatory facts, arresting and/or imprisoning Plaintiff, and initiating and continuing the prosecution of Plaintiff all without probable cause; by failing to intervene and stop each other from engaging in said conduct when Defendants had the ability to do so.

68. The acts and omissions of Defendants constituted conduct so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiff.

69. As the direct and proximate result of each Defendant's gross negligence Plaintiffs suffered injury and damage as more fully set forth below.

## COUNT FIVE
## MALICIOUS PROSECUTION

70. Plaintiff realleges each preceding paragraph as if more fully stated herein.

71. Defendants, and each of them, caused or continued the prosecution of the Plaintiff, which proceedings terminated in favor of the Plaintiffs.

72. The prosecution was initiated or continued without probable caused.

73. The prosecution was initiated or continued with malice or a primary purpose other than that of bringing the true offender to justice.

74. As a direct and proximate cause of Defendants conduct Plaintiffs suffered injury as set forth below.

**COUNT SIX**
**FEDERAL CLAIM OF MALICIOUS PROSECUTION**
**IN VIOLATION OF THE 4TH AMENDMENT**

75.     Plaintiff realleges each preceding paragraph as if more fully stated herein.

76.     Defendants, and each of them, wrongfully investigated, wrongfully initiated and wrongfully continued the prosecution of Plaintiff and said prosecution terminated in Plaintiff's favor.

77.     Defendants, and each of them, wrongfully investigated, wrongfully initiated and wrongfully continued the prosecution of Plaintiffs without probable cause, with malice or a purpose other than to bring the true offender to justice.

78.     As a direct and proximate cause of Defendants' conduct Plaintiff suffered injury and damages as set forth below.

**DAMAGES**

79.     Plaintiff realleges each preceding paragraph as if more fully stated herein.

80.     As the direct and proximate result of each and every one of the named Defendant's actions as set forth within this Complaint Plaintiffs suffered injury and damages, including, but not limited to:

      a. Loss of liberty and property;

      b. Legal expenses;

      c. Humiliation, outrage, indignity, mental distress, anxiety and sleeplessness, and depression;

      d. Embarrassment, shock and trauma;

      e. Other damages currently unascertainable;

      f. Exemplary damages and reasonable attorney fees.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court grant judgment against the Defendants for whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which Plaintiff is found to be entitled, plus interest, costs and attorney fees.

s/Racine M. Miller<br>
Robinson & Associates, P.C.<br>
Attorney for Plaintiff<br>
28145 Greenfield Road, Suite 100<br>
Southfield, Michigan 48076<br>
(248) 423-7234<br>
attymiller@davidrobinsonlaw.com<br>
(P72612)

Dated: January 14, 2010

## JURY DEMAND

NOW COMES the Plaintiff John H. Autrey, by and through his undersigned attorneys, and hereby demands a trial by jury of each and every matter at issue in the above-entitled cause.

s/Racine M. Miller<br>
Robinson & Associates, P.C.<br>
Attorney for Plaintiff<br>
28145 Greenfield Road, Suite 100<br>
Southfield, Michigan 48076<br>
(248) 423-7234<br>
attymiller@davidrobinsonlaw.com<br>
(P72612)

Dated: January 14, 2010